UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY SZOSTEK,

                    Plaintiff,              Civil Action No.: 14-11531
                                        Honorable Sean F. Cox
                    v.                  Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 11, 13]

Plaintiff Jeffrey Szostek appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB") under the Social Security Act (the

"Act").  Both parties have filed summary judgment motions, which were

referred to this Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  The Court finds that the Administrative Law Judge

("ALJ") violated the treating physician rule in failing to give good reasons for

rejecting the opinions of Szostek's treating physiatrist, that those opinions

are supported by the record evidence and thus entitled to controlling

weight, and that affording them controlling weight results in the award of a

closed period of benefits.  For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 13]** be **DENIED**;

- Szostek's motion **[R. 11]** be **GRANTED in part** to the extent it seeks remand but **DENIED in part** to the extent it seeks reversal and an award of benefits; and,

- the Commissioner's decision be **REVERSED AND REMANDED** for the award of a closed period of benefits from March 17, 2006 to May 17, 2008, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Claimant's Background and Claimed Disabilities

Szostek was a thirty-four year-old high school graduate on his alleged onset date, who had previously worked for twelve years as a die-setter.  [R. 6-5, Tr. 135].  He had a history of work-related low back injuries during his employment, all of which had resolved.  [R. 6-9, Tr. 645, 648, 664-65, 667]. He reinjured his lower back in March 2006 and was placed on restricted light duty until April 2007, when he was cleared by Worker's Compensation to return to full time duty, but he was terminated that July because he could not work full time.  [R. 6-6, Tr. 177-78, 180-81].  Szostek alleges disability based on his lower back injury and diabetes.  [*Id.*, Tr. 190].

**B.    Procedural History**

Szostek filed an application for DIB, alleging disability as of March 17,

2006.  [R. 6-5, Tr. 135-43].  The claim was denied initially and Szostek filed

a timely request for an administrative hearing, held on September 10, 2012,

at which both he and a vocational expert ("VE") testified.  [R. 6-2, Tr. 34-69;

R. 6-4, Tr. 79-85, 91-117].  In an October 24, 2012 written decision, the

ALJ found Szostek not disabled.  [R. 6-2, Tr. 11-33].  The Appeals Council

denied review, making the ALJ's decision the final decision of the

Commissioner for purposes of this review.  [*Id.*, Tr. 1-6].  Szostek timely

filed for judicial review.  [R. 1].

**C.    The ALJ's Application of the Disability Framework**

DIB is available for those who have a "disability."  *See Colvin v.

Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

3

gainful activity," he or she will be found not disabled. 20 C.F.R. §
404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1]   Second, if the claimant has
not had a severe impairment or a combination of such impairments[2] for a
continuous period of at least 12 months, no disability will be found.  *Id.*
Third, if the claimant's severe impairments meet or equal the criteria of an
impairment set forth in the Commissioner's Listing of Impairments, the
claimant will be found disabled.  *Id.*  If the fourth step is reached, the
Commissioner considers its assessment of the claimant's residual
functional capacity ("RFC"), and will find the claimant not disabled if he or
she can still do past relevant work.  *Id.*  At the final step, the Commissioner
reviews the claimant's RFC, age, education and work experiences, and
determines whether the claimant could adjust to other work.  *Id.*  The
claimant bears the burden of proof throughout the first four steps, but the
burden shifts to the Commissioner if the fifth step is reached.  *Preslar v.
Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this sequential process, the ALJ concluded that Szostek
was not disabled.  At step one, the ALJ determined that Szostek had not
engaged in substantial gainful activity since his alleged onset date, noting

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

that his six- to eight-hour-a-week self-employment as a silk-screen printer did not rise to the level of gainful employment.  [R. 8-2, Tr. 17].  At step two, the ALJ identified severe impairments of degenerative disc disease of the lumbar spine, diabetes mellitus type 2, hypertension, obesity and gout. [*Id.*].  At step three, the ALJ found that none of Szostek's impairments met or medically equaled a listed impairment, considering them against Listings 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), 4.00 *et seq.* (Cardiovascular System), and 9.00(B)(5) (Diabetes mellitus and other pancreatic gland disorders).  [*Id.*, Tr. 17-18].  The ALJ also considered the effects of Szostek's obesity on his other impairments.  [*Id.*, Tr. 17, 27].

Next, the ALJ assessed Szostek's residual functional capacity ("RFC") finding him capable of sedentary work with a sit/stand option that allowed him to move about the work station while standing, with only occasional operation of foot controls with the right lower extremity, occasional climbing of ladders, ramps or stairs, no climbing of ropes or scaffolds, and only occasional stooping, crouching, kneeling or crawling. [*Id.*, Tr. 18].  At step four, the ALJ determined that Szostek's RFC prevented him from returning to his past relevant work.  [*Id.*, Tr. 28].  At step five, with the assistance of VE testimony, the ALJ concluded that a person matching Szostek's profile could perform a substantial number of

5

other jobs in the national economy such that he was not disabled.  [*Id.*, Tr. 28-29].  The VE testified that such a claimant could perform the job of surveillance system monitor, with 1,500 jobs in the region.  [*Id.*, Tr. 66].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40

7

(internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Szostek is not disabled is supported by substantial evidence.

## III.   ANALYSIS

Szostek argues that the ALJ erred in failing to give good reasons for rejecting the opinion of treating physiatrist Jai Duck Liem, M.D., who issued multiple opinions between 2006 and 2008 limiting Szostek to only four hours of work a day, along with other restrictions.  The Court agrees with Szostek that the ALJ did not comply with the treating physician rule when assessing these opinions.  However, the Court disagrees that Dr. Liem's restrictions remained effective through the date of the ALJ's decision.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the

8

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).  The Court will "not hesitate to remand" when an ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v.* 661 F.3d at 939 (internal quotation marks and citation omitted).

Szostek was injured in mid-March 2006, and between March 24 and May 9, 2006, Dr. Liem, another doctor and a physician's assistant issued work restrictions limiting Szostek's ability to lift, push and pull, and, at certain points, limiting him to no prolonged standing and/or walking.  [R. 6-8, Tr. 281, 288-90, 293, 297].  Szostek was not limited by a doctor to less than full time work during this time, but he was not working due to the unavailability of restricted work for him.  [*Id*; R. 6-8, Tr. 401; R. 6-9, Tr. 729, 735, 739].  An April 2006 MRI identified mild degenerative discopathy, spondylosis, facet arthropathy and a disc protrusion at L4-L5 impinging on the left L4 nerve root, and a broad annual bulge at L5-S1 causing mild to moderate foraminal stenosis and mild impingement on the left L5 nerve

9

root. [R. 6-8, Tr. 382-83]. On May 23, 2006, Szostek reported to Dr. Liem that his employer had finally been able to offer him restricted work, but that he had been barely able to tolerate half a day before becoming miserable with pain, and was then off work until his doctor appointment. [R. 6-8, Tr. 427]. Dr. Liem added a restriction to only four hours of work a day. [*Id.*, Tr. 276].

Over the next year and a half, Dr. Liem (and on one occasion Hi C. Song, M.D.) continued to restrict Szostek to four hours of work a day. [*Id.*, Tr. 251-53, 257, 261-64, 271]. In January 2007, Dr. Liem increased Szostek to five hours of work a day, which continued into February 2007. [*Id.*, Tr. 249-50]. However, by March 2007, Szostek reported increased symptoms with the increase in hours, and Dr. Liem reverted to his previous restrictions. [*Id.*, Tr. 248, 491]. Dr. Liem continued to issue part-time work restrictions through March 2008, this last opinion stating that it was effective for two months. [*Id.*, Tr. 239-47]. Although Dr. Liem treated Szostek for back pain in December 2008, May 2011 and January 2012, he did not issue any further restrictions. [R. 6-9, Tr. 762-68].

The ALJ considered Dr. Liem's various opinions and found his restrictions limiting Szostek's ability to lift, push, pull, stand and walk were "well supported by the objective and other substantial evidence" and gave

them "controlling weight to the extent they are consistent with the residual

functional capacity assessed herein." [R. 6-2, Tr. 20]. The ALJ did not give

controlling weight to Dr. Liem's restrictions to part-time work, stating:

> After considering the length, frequency, nature and extent of the
> treating relationship between the claimant and Dr. Liem, the
> supportability and consistency of the physician's conclusions,
> and the specialization of the physicians as required in this
> Circuit . . . I find that the treatment notes do not substantiate a
> part-time work restriction, and thus assign greater weight to the
> treatment notes than to the physician's assessed restrictions.

[*Id.*, Tr. 21]. Although ALJ then went on to summarize the medical

evidence in detail, he never explained why these records did not support

Dr. Liem's part-time work restriction. [*Id.*, Tr. 20-26].

The Court finds error with the ALJ's application of the treating

physician rule, as his analysis is not "sufficiently specific to make clear to

any subsequent reviewers the weight . . . [given] to the treating source's

opinion and the reasons for that weight." *Cole,* 661 F.3d at 937. The ALJ's

statement that he gave greater weight to Dr. Liem's treatment notes than

his issued restrictions fails to alert to Court to exactly what weight he

afforded Dr. Liem's part-time restriction.

This error is not harmless. "[A] violation of the good reasons rule can

be deemed to be harmless error if (1) a treating source's opinion is so

patently deficient that the Commissioner could not possibly credit it; (2) if

11

the Commissioner adopts the opinion of the treating source or makes

findings consistent with the opinion; or (3) where the Commissioner has

met the goal of [20 C.F.R.] § 1527(d)(2)[3] . . . even though she has not

complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (internal

quotation marks and citation omitted).  None of these circumstances apply

here.

    As noted above, the ALJ's RFC specifically did not incorporate a

limitation to part-time work, and such a limitation would necessarily render

Szostek disabled.  SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 (July

2, 1996) (requiring ALJ's RFC to be based on claimant's ability to perform

full-time work).  Nor did he meet the goals of § 1527(d)(2) when he failed to

give good reasons for disregarding Dr. Liem's part-time restrictions.  *See*

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (§

1527(d)(2) goals not met when ALJ did not give good reason for

disregarding treating physician's opinion).

    Finally, Dr. Liem's opinions are not patently deficient.  To the

contrary, the medical evidence of record (including Dr. Liem's treating

notes) fully supports a restriction to part-time work during this period.  As

---

[3] This section requires the commissioner to consider medical sources,
including treating physicians, when deciding whether a claimant meets a
listing, when issuing a RFC  and when applying vocational factors.

noted above, Dr. Liem first imposed this limitation shortly after Szostek

began working again.  [R. 6-8, Tr. 276, 427].  He reported attempting to go

to work, making it barely a half a day, and then being off work for a period

of time until he could see Dr. Liem.  [*Id.*, Tr. 427].  For the next nineteen

months, Szostek continued to report little change in his condition, despite

several rounds of physical therapy totaling more than 30 sessions overall.

[R. 6-7, Tr. 236-37; R. 6-8, Tr. 373, 376-77, 428-93].  Although Szostek

presented with little evidence of radiculopathy,[4] he most often presented

with muscle spasms, tenderness to palpation, and restricted range of

lumbar motion, with only 60-70 degrees of flexion with pain and 10-20

degrees of extension, again with pain.  [R. 6-7, Tr. 236-37; R. 6-8, Tr. 377,

433, 455, 459, 461, 464, 466, 491].  A repeat MRI in January 2007 showed

little change from the April 2006 MRI.  [*Id.*, Tr. 380-81].

Even with the restriction to part-time work, Szostek continued to

suffer pain and took time off of work as a result.  He reported "barely

making it" through a half day, sometimes missed work due to pain, and that

he had to lie down for two hours after work before being able to engage in

---

[4] Despite the MRI noting nerve root impingement and Szostek's consistent reports of pain radiating to his buttocks, objective tests including an EMG and straight leg raising tests were consistently negative, and there was no evidence of muscle weakness or sensory or reflex loss.  [R. 6-7, Tr. 236-37; R. 6-8, Tr. 376-77, 382-83, 401-407, 416, 427, 432, 441-42, 459-69, 476, 481-92; R. 6-9, Tr. 709-10, 722-25, 729-30, 735-36, 739-40].

activities around the house. [*Id.*, Tr. 264, 441, 459, 463-64]. When he was required to go back to work full time, he reported doing so for only one week, then had to drop to half-time, and then take vacation leave. [*Id.*, Tr. 376]. While at times Dr. Liem opined that Szostek was improving and would soon be able to return to full-duty, setbacks ultimately thwarted those hopes. [*Id.*, Tr. 461-64, 486-92]. Szostek's physical therapists frequently noted that he was making only slow progress and sometimes had worsening symptoms, and Szostek was discharged more than once for plateauing. [*Id.*, Tr. 408, 414, 423, 435, 439, 447, 451, 456, 467, 483].

Szostek was initially hesitant to consider surgery, [*Id.*, Tr. 483, 486], but after a course of three epidural injections that did not provide long-lasting relief, he agreed to a surgical consult by Hilesh Patel, M.D.. Dr. Patel noted that the success rate for surgery was between 60-70%, and that he should try more aggressive physical therapy and anti-inflammatory medication first. [*Id.*, Tr. 374-77, 486-95].

Szostek sought a second opinion from Teck Mun Soo, M.D., who opined that Szostek was not a candidate for surgery based on his age and a lack of neurological deficits. [*Id.*, Tr. 368-70, 373]. Szostek underwent two more epidural injections in late 2007 at a pain clinic that Dr. Soo had recommended. [R. 6-7, Tr. 236]. Dr. Liem continued to restrict Szostek to

14

part-time work through May 2008, and noted in January 2008 that Szostek was receiving treatment at the pain clinic.  [*Id.*, Tr. 236-37, R. 6-8, Tr. 239-41].

The Court finds that Dr. Liem's restriction to part-time work from his onset date of March 17, 2006 to May 17, 2008, is well-supported by medically acceptable evidence, is not inconsistent with other substantial evidence, and thus should have been afforded controlling weight. *Gentry, 741 F.3d at 723, 727-29*; *Rogers, 486 F.3d at 242-43*.  The lack of specific neurologic findings, while relevant to whether Szostek met or medically equaled a listing, it is not the only indicator of pain, and other objective findings, including his MRI and physical examinations, support the subjective level of pain he reported experiencing.  *Johnson v. Comm'r of Soc. Sec., 652 F.3d 646, 652 (6th Cir. 2011)* (noting that treating physician was a pain specialist and that "pain is by definition a somewhat subjective matter").  In addition, although the restrictions to part-time work were extended until five months after Szostek's December 2007 appointment with Dr. Liem, the treating physician's opinion regarding the necessary period of recovery is entitled to controlling weight.  *See Pruitt v. Astrue, 724 F. Supp. 2d 464, 470 (D. Del. 2010)* (ALJ erred by failing relying upon own expertise and disregarding treating physician's opinion on recovery

progress).

Furthermore, the ALJ's decision to evaluate the treatment notes and substitute his own medical judgment for that of the treating physician was in clear violation of the treating physician's rule. *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009). "While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (citation, internal quotation marks and brackets omitted). Considering this blackletter law, the ALJ's statement that he gave greater weight to Dr. Liem's treatment notes than to the doctor's own assessment of them is inherently problematic.

In light of this conclusion, the Court finds remand appropriate to grant Szostek an award of a closed period of benefits for a period from March 17, 2006 to May 17, 2008, which exceeds the twelve-month durational requirement.[5]

The Court disagrees with Szostek, however, that giving Dr. Liem's opinions controlling weight necessitates a finding of an open period of

---

[5] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

16

disability.  Contrary to Szostek's assertion that Dr. Liem's last-issued restrictions remain in force, Dr. Liem set his last restriction order to expire two months after it was written on March 17, 2008.  [R. 6-8, Tr. 239].  Since Szostek's only argument is that the ALJ violated the treating physician rule with respect to the part-time restriction, and since that restriction expired in May 2008, the Court's analysis could end here.

However, the Court will note that the medical records do not otherwise support a finding that Szostek was disabled after May 2008.  He treated with his primary care provider, Donald B. Welzer, M.D., six times between April and November 2008, and the treatment notes do not mention back pain as a present complaint.  [R. 6-9, Tr. 782-88].  When Dr. Liem treated Szostek again in December of that year, he noted that Szostek's pain "gradually got better fortunately" and that he had begun performing sedentary work for a friend's company at the beginning of summer and was "doing fairly well until recently" when he experienced sudden pain without injury.  [*Id.*, Tr. 767-68].  After an exam, Dr. Liem opined that Szostek suffered a bilateral sacroiliac sprain and that his pain was not related to his disc problems, and he did not issue any work restrictions.  [*Id.*].

Szostek treated with Dr. Welzer four times over the next two years,

17

and back pain was never included as a present complaint.[6]  [*Id.*, Tr. 775-81].  Notably, Dr. Welzer twice recorded that Szostek's musculoskeletal examination showed normal strength and tone, and that all of his muscles had normal strength.  [*Id.,* Tr. 775-78].  In February 2011, Szostek again presented to Dr. Liem, who noted that Szostek's pain had been "off and on" since 2008 and "not that significant" until recently, when he began experiencing a significant increase in pain.  [*Id.*, Tr. 765-66].  Dr. Liem again diagnosed Szostek with a bilateral sacroiliac sprain and recommended physical therapy, but issued no work restrictions.  [*Id.*].

After the therapy concluded, Dr. Liem conceded that the problem was both a sprain and a disc protrusion and ordered an updated MRI, which Szostek could not obtain until January 2012 due to insurance issues.  [R. 6-9, Tr. 762-64].  In the interim, Szostek underwent a consultative examination with Amjad Shidyak, M.D., who found that he had a normal wide-based gait and only a mildly decreased lumbar range of motion, without indication of pain.  [*Id.*, Tr. 752-58].  Dr. Shidyak opined that Szostek was capable of all functional abilities, and observed that he could

---

[6] Although Szostek testified that his present insurance only covered two doctor appointments a year, which he reserved for his primary care physician who monitored his diabetes, [R. 8-2, Tr. 61], there is no evidence that, as a general practitioner, he could not have addressed Szostek's back pain to some extent.

get on and off the exam table and walk around the room without difficulty. [*Id.*].  The January 2012 MRI showed bi-level disc displacement at L4-L5 and L5-S1 with abutment of the exiting L4 and L5 nerve roots, borderline mild central canal stenosis at L3-L4, and L4-L5 secondary to prominent posterior epidural lipomatosis (excessive accumulation of fat within the spinal epidural space).  [*Id.*, Tr. 769-70].   Nonetheless, Dr. Liem recommended only epidural injections and did not issue work restrictions, and Szostek testified that his most recent injection had been the most beneficial of all of them to date.  [R. 6-2, Tr. 43; R. 6-9, Tr. 762-63].

For these reasons, the Court recommends that Dr. Liem's opinions restricting Szostek to part-time work be found controlling for a period from March 17, 2006 to May 17, 2008.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Szostek's Motion for Summary Judgment **[R. 11]** be **GRANTED IN PART AND DENIED IN PART** as outlined above, the Commissioner's Motion **[R. 13]** be **DENIED** and this case be **REVERSED AND REMANDED** for a closed period of benefits for the period between March 17, 2006 to May 17, 2008.

Dated: August 10, 2015                    s/Elizabeth A. Stafford
                                          ELIZABETH A. STAFFORD
                                          United States Magistrate Judge

19

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).   Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.   *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.   Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.   The response must be **concise and proportionate in**

20

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
